GRAFTON B. DUVALL, *vs.* THE PRESIDENT, &c. OF THE FARMERS BANK OF MARYLAND.—*June* 1835.

On the 17th July 1827, G entered into the following agreement:—" Whereas I am endorser of three notes drawn by L, payable to R, and endorsed by R and myself, the *first* bearing date the 9th May 1827, payable at sixty days after date; the *second* bearing date the 1st June 1827, payable at ninety days after date; and the *third* bearing date the 20th June 1827, payable at sixty days after date. And whereas at my request, the bank which holds the said notes, have agreed *not to protest* the same or to *ask a renewal* of them when they become due—I do hereby agree to dispense with all notice of the *time* of payment, or of the *non-payment* of said notes, and to be answerable for the

amount of said notes, although no such notice is given to me." In an action by the bank to recover the notes of 9th May and 20th June, it was held, that this agreement was to be construed with reference to the condition of those notes at the time of making the agreement—one of them being then due, and the other, not at maturity—and 1st. That as to the note *which was due,* the agreement not to protest, implied that there had been a demand, and was a dispensation of notice of non-payment. 2nd. That as to the note *not then due,* the agreement implied an *obligation* to demand payment, and waived its performance—agreeing to be responsible without notice.

When the finding of the jury is in conformity to the true construction of the proof, and the instructions of the court below are in no manner prejudicial to the defendants rights, this court will not reverse the judgment upon the defendants appeal.

When the right of a plaintiff to recover depends upon proof adduced by him of the execution of certain instruments, it is error in the County court to assume the truth of his proof, and instruct the jury peremptorily that he is entitled to recover a specific sum of money.

Usury depends on intention, and it does not necessarily follow from taking greater interest than allowed by law, that usury is established. When too much interest is taken by mistake or error, usury cannot be deduced. The jury must find an intention to take more than legal interest.

The calculations or deductions of interest according to Rowlet's tables were in all cases legalized by the act of 1826, ch. 90.

APPEAL from *Anne-Arundel* County court.

This was an action of ASSUMPSIT instituted by the appellees against the appellant, as the second endorser of two promissory notes, drawn by *Lewis Duvall,* and endorsed by *Richard Duvall,* and the defendant; the first dated May 9th 1827 for $7857, payable sixty days after date; the other dated June 20th 1827, also at sixty days for $750.

The declaration contained counts on the notes; on the special agreement hereinafter mentioned, and for money lent and advanced.

Issue was joined upon the plea of *non assumpsit.*

1. At the trial, the plaintiffs proved by a competent witness the signatures to said notes, and the endorsements by the defendant of each of them, the signature of *Grafton B. Duvall* being his hand writing. The plaintiffs also having proved the execution by the defendant of the same, offered in evidence the following agreement with respect to said notes, and a third note not now in suit, entered into by the defendant with the plaintiffs.

" Whereas I am endorser of three notes, drawn by *Lewis Duvall,* payable to *Richard Duvall,* and endorsed by *Richard Duvall* and myself, the first bearing date the 9th day of May 1827 for $7857, payable sixty days after date. The second for $300, bearing date the 1st day of June 1827, payable ninety days after date ; and the third for $750 bearing date the 20th of June 1827, payable sixty days after date ; and whereas at my request, the *President, Directors, and Company of the Farmers Bank of Maryland,* who hold the said notes, have agreed not to protest the same, or to ask a renewal of them when they become due ; I do hereby agree to dispense with all notice of the time of payment, or of the non-payment of said notes, and to be answerable for the amount of said notes although no such notice is given to me. As witness my hand this 17th day of July 1827.     *Grafton B. Duvall.*"

Witness *Th. Franklin.*

Whereupon the defendant prayed the court to instruct the jury.

1st. That by the agreement aforesaid, the defendant did not waive his right to require the plaintiffs to prove, that they had demanded payment of the aforesaid note for $7857 from the drawer, when the same became payable ; and that the plaintiffs will not be entitled on the testimony aforesaid to recover the amount of the said note, on the second count of their declaration, without proof that payment of said note was demanded when the same became due.

2nd. That the agreement aforesaid, is not evidence that the plaintiffs had demanded said note for $750 of the drawer, when the same became payable ; and also that the defendant did not by said agreement waive his right to require that the holder should demand payment of said note, when the same had become payable ; and further prayed the court to instruct the jury, that for these reasons the plaintiffs were not entitled, upon the aforesaid proof, to recover upon the first count in the declaration.

The plaintiffs by their counsel, objected to said prayer, and insisted that upon the proof offered, the plaintiffs were entitled

to a verdict, upon each of the said counts, and if not upon these counts, that the proof was sufficient, if believed by the jury, to entitle the plaintiffs to a verdict, upon either of the two last counts in the declaration. But the court, (*Dorsey Ch. J. and Wilkinson A. J.*) were of opinion, and so instructed the jury, that without other proof of a demand by the plaintiffs, of the amount of either note, from the drawer, when the same was due, that the plaintiffs have no right of action, founded on either note, and the agreement aforesaid. *The plaintiffs excepted.*

2d EXCEPTION. In addition to the evidence offered in the previous exception, and which by agreement makes a part of this exception, the plaintiffs in order to prove that the notes upon which this suit is brought, were renewals of an old accommodation, granted to *Lewis Duvall*, on his notes endorsed by *Richard Duvall*, and the defendant; and that at the time said notes came to maturity, the defendant knew that said notes so sued on, were not to be paid at maturity by *Lewis Duvall*, and that they were to be renewed by the agreement already in evidence signed by the defendant, offered in evidence to the jury, two deeds of mortgage from *Lewis Duvall* to *Richard*, and *Grafton B. Duvall*, dated respectively the 9th of February 1825, and the 5th of July 1827; the former of which, professes to be in consideration of the sum of $6720, due to the grantees, in consequence of their endorsement for the grantor, of sundry negotiable notes at the *Farmers Bank of Maryland ;* its object being to indemnify them against that responsibility, or any other which they might assume for him as endorsers—and containing a covenant that the mortgagor would pay the money on or before 1829— the latter professing to be in consideration of the sum of $10,000, which it recites to be due from the grantor to the grantees—and likewise for the purpose aforesaid, they offered to read to the jury, a written assignment, executed by *Lewis Duvall* on the 10th July 1827, to the plaintiffs, of his the said *Lewis's* wife's interest in the personal estate of a deceased relative, *Benjamin Harwood ;* the object of said assignment

being, as declared upon its face, to secure the payment of various enumerated debts due from the assignor to the plaintiffs.

The plaintiffs also proved, by the subscribing witness thereto, that the agreement signed by the defendant, bearing date the 17th of July 1827, and which is set forth in a previous exception, was executed by the defendant in their banking house; and thereupon by their counsel prayed the court to instruct the jury, that if they find that the notes upon which this action is brought, were renewals of an old accommodation, granted to *Lewis Duvall,* on his notes, endorsed by *Richard Duvall,* and the defendant, and that at the time, the said notes came to maturity, the defendant knew, that said notes so sued on, were not to be paid at maturity by *Lewis Duvall,* and that they were to be renewed but for said agreement, then the plaintiffs are under no obligation to give any other evidence than has been offered, that any actual demand had been made, on the said *Lewis Duvall* for the payment of said notes; but that the jury are at liberty to infer, that the defendant agreed to hold himself liable for said notes; and that the plaintiffs are entitled to recover, as if the plaintiffs had given evidence of an actual demand for payment of said notes on the day they fell due, of the maker; and the court, upon objections to the granting of the prayer being urged by the defendant's counsel, decided, that the deed of the 5th of July 1827, and the assignment by *Lewis Duvall* to the plaintiffs were inadmissible, as evidence, but they were of opinion and so instructed the jury, that the deed of the 9th February 1825, was admissible, and admitted the same to be read in evidence, and upon the evidence so admitted before the jury, gave the instruction as prayed for by the plaintiffs. *The defendant excepted.*

3d EXCEPTION. In addition to the evidence offered in all the preceding bills of exception, which evidence is to be considered as a part of this exception; the plaintiffs proposed to read to the jury, two deeds of mortgage executed by *Lewis Duvall,* the maker of the notes, the first dated July 28th 1815,

in favor of the plaintiffs, to secure the payment of $9000 due them on a note discounted by them, by which deed, a tract of land, and all the personal property, of which the mortgagor was then in possession, was conveyed to the plaintiffs. The second being the deed of the 5th of July 1827, in favour of *Richard Duvall,* and the defendant, referred to in the preceding exception—and also offered proof, that no payments were made by the defendant, or said *Richard Duvall,* to the plaintiffs on account of said notes, so endorsed by them, for said *Lewis Duvall,* and thereupon the plaintiffs by their counsel asked of the court the following instructions :—

1st. That if the jury find from the evidence, that the defendant and *Richard Duvall,* the first endorser on the notes sued for, on the 9th day of February 1825, obtained a mortgage from *Lewis Duvall,* the maker of said notes, to indemnify them on account of their endorsements, on the original accommodation granted him on this endorsement as aforesaid, and that the notes sued upon, are a continuation of such accommodation, and that said mortgage was in full force when said notes fell due, that then the plaintiffs are not bound to give other evidence, than they have offered, of a demand, on the maker for the payment of said notes when they fell due.

2d. That if the jury find the fact aforesaid, and also find, that said mortgage, and the deed of the 5th July 1827, and the mortgage to the plaintiffs by said *Lewis Duvall,* of the 28th July 1815, conveyed all his said *Duvall's* property, that then the plaintiffs, are not bound to give other evidence than they have given, of a demand on said maker, for the payment of said notes. The court granted the last instruction as prayed, but refused the first.—*The plaintiffs* and *defendant excepted.*

4th EXCEPTION. The defendant then offered in evidence to the jury sundry statements furnished by the plaintiffs, to the defendants counsel, whereby they claimed to be due on the aforesaid note for $7857, a balance of $6832,81 with interest from the 11th day of February 1831, and also other copies of statements prepared by the Auditor of the

7

court of Chancery, whereby the balance claimed on said note was further reduced to the sum of $4563,12 with interest from the 8th December 1831; and thereupon the plaintiffs proved, that in the statements aforesaid furnished by the plaintiffs, the said note is credited with the sum of $922,43 as received by the plaintiffs from the administrators of *Benjamin Harwood* deceased, under the assignment herein before mentioned, and that afterwards on the 25th June 1832, the said sum of money was paid by the plaintiffs to *Sarah Duvall,* in obedience to the decree of the Court of Appeals, passed in the cause of *Sarah Duvall* against the present plaintiffs, which is reported in the 4th of *Gill and Johnson's* 282, and which case shall be read from said book, as if incorporated in this bill of exceptions; and insisted on their right to claim the aforesaid sum of $922,43 with interest from the 25th June 1832, in addition to said balance of $4563,12 before mentioned.    The defendant thereupon proved, that *Henry H. Harwood,* one of the administrators of *Benjamin Harwood* in 1832, and for many years before was *President of the Farmers Bank of Maryland,* and that the other administrator *Richard Harwood* of *Thomas* in 1832, and for many years before was a director of said bank, and that they kept their account as administrators with said bank, and deposited therein all monies received by them, and that the sum of $1416,29 was standing to their credit in said bank, on the 22d July 1830, and before, and after that day, and that the said administrators and the plaintiffs, had notice on the 23d day of July 1830, of the order of the Chancellor of that date; and therefore denied, that the said plaintiffs were entitled to demand, the said sum of $922,43 of this defendant.    But the court was of opinion, and so instructed the jury, that the plaintiffs were entitled to recover the said sum of money.—*The defendant excepted.*

5. The defendant then read to the jury an agreement signed by the plaintiff's counsel, showing that the notes upon which the action is brought, are renewals of various notes, discounted by the plaintiffs originally in the years 1814, 1815,

1819, and 1822. That some of them were discounted for 60 and some for 90 days. That from the establishment of the bank, until the 19th of December 1821, on the first discounting of a note for 60 days, the bank retained for discount a sum equal to the interest on the amount of the note for 64 days, and the same rule prevailed in respect to 90 day notes; and that like sums were required to be paid on every renewal. Since the 19th of December 1821, the practice has been, to retain for discount a sum equal to the interest on the amount of the note for 63, or 93 days, as the case might be, at the time of the original discounting, and at each successive renewal. That the bank has always been in the practice of charging interest, or discount, agreeably to the calculations in *Rowlett's tables,* which book it is agreed shall be read in the argument of this case. That the discounts on all the notes, discounted prior to the 22d February 1826, calculated according to the rules hereinbefore stated, were regularly paid. The discounts on those discounted since, have been paid out of monies received on the 28th of July 1827, in virtue of the assignment of *Lewis Duvall* to the plaintiffs, of the 10th of July 1827, referred to in the preceding exceptions. It was further admitted, that three days of grace are allowed on all notes discounted at the banking house of the plaintiffs, and that when a note is discounted in renewal of another note before discounted, the second note always bears date on the day, on which the note first discounted became payable. And it was further agreed, that an action was heretofore brought in *Prince George's* County court, by the plaintiffs against *Richard Duvall* the first endorser, on the note for $7857, to which the defendant pleaded the general issue, and at October term 1833 of said court, a verdict and judgment was rendered in said action in favor of the defendant; on the ground that the plaintiffs had failed to prove that a demand of payment, was made on the drawer of said note."

The defendant then upon the whole evidence in this, and the aforegoing exceptions, prayed the court to instruct the jury; that the plaintiffs are not entitled to recover on the

note for $7857, because the interest charged and received on said note, is more than is authorized by law, and because said note, was given as a renewal of other notes, upon which usurious interest was charged and received.

The court refused the prayer, and the verdict, and judgment being for the plaintiffs, the defendant sued out a writ of error to this court.

The cause was argued before STEPHEN, ARCHER, and CHAMBERS, Judges.

TANEY, BOYLE, and ALEXANDER, for the appellants contended,

1. That the agreement of the 17th July 1827, in the first exception, did not dispense with the necessity of a demand of the note upon the maker. That notwithstanding that agreement, the plaintiff was bound to prove, that he demanded the money of the maker when the notes became due. This action is against the second endorser, between whom and the first endorser there are distinctions, in favour of the former. The first endorser occupies the situation of the drawer of a bill of exchange, the second the endorser of such a bill, and the rules applicable to paper of that description must govern this case. Now, though in reference to such paper, it is not necessary to give notice of non-payment by the drawer, when the drawer has no funds in his hands, so far as the liability of drawer is concerned, yet in reference to the endorser such notice must be given, or he is discharged from responsibility. *Chitty Jr. on Bills* 58, note (*K.*) And even with regard to the drawer of a bill without funds, though he is not entitled to notice of dishonor, he has yet a right to insist on the demand, and if it be not made, he is discharged.—*Ib.* 47, 48, *note* 44, 49, 50, 58. If presentment is not made in time, the parties collaterally liable are discharged, though no injury results from the omission.—*Ib.* 54.

The rule dispensing with notice, does not depend upon the fact, that the drawer had no reason to suppose his bill would

be paid, or that he could not be injured by the neglect, but because if he did get notice, he has no remedy over.—*Chitty Jr. on Bills* 58, *note* (*K.*) A party will not be deemed to have waived demand, and notice, by a promise to pay, unless the promise is made with a full knowledge of the facts; and a waiver of notice merely, is not a waiver of demand also.— *Ib.* 60, 61, *note* 57.

The distinctions insisted on, between the situation of drawers and endorsers, and the rule that dispensation of notice, is not a waiver of the demand, have been recognized by this court; and this uniformity of decision is salutary, as going far to establish the credit and usefulness of commercial instruments. *Clopper, vs. Union Bank,* 7 *H. & J.* 93. There, the court decided, that notice is necessary in every case, except where, the drawer has no funds in the hands of the drawee; and the reason given for the exception is, that if he gets notice, he can do nothing but pay the money which he is bound to pay. *Goodall et al, vs. Dolley,* 1 *Term Rep.* 712. *Darbishire vs. Parker,* 6 *East* 16, *note. Lundie vs. Robertson,* 7 *Ib.* 231. *Duryee vs. Dennison,* 5 *Johns. Rep.* 248. *Borradaile vs. Lowe,* 4 *Taunt.* 93. *Fortheringhan vs. Ex'rs. of Price,* 1 *Bay* 291. *Ogden vs. Saunders,* 12 *Wheat.* 283. *Donaldson vs. Means,* 4 *Dallis* 109. 1 *Kent Com.* 78. *Bond vs. Farnham,* 5 *Massa. Rep.* 170. *Prentiss vs. Danielson,* 5 *Con. Rep.* 175.

2. When the agreement of the 17th July 1827 was signed, the bank had no knowledge of the deed of the 9th February 1825, for although it was recorded, that simply gives constructive notice as to title. In case of a conflict of title it would be evidence, but for no other purpose. By that deed the maker covenanted to pay the notes in 1829, but the endorsers did not stipulate to wait until then, or to continue their endorsements so long. By taking the mortgage, the endorsers did not preclude themselves from the right of resorting to the person, or other property of the maker. There was no correlative covenant on the part of the endorsers, and the court will not raise one by implication, especially when

the bank was not a party to the mortgage, and could at any time, have compelled the endorsers to pay the money.

The other deed of the 5th of July 1827, having been rejected, the propriety of the courts opinion in this exception, depends upon the operation of this deed of February 9th 1825.

There is no evidence of an agreement between the maker of the notes, and the bank, that they should be renewed, and if there was, it does not appear that the endorsers had notice of it; and yet the existence of such an agreement, and the knowledge of its existence on the part of the endorsers, were matters submitted to the jury, who were consequently called upon to find facts, without any evidence tending to establish them. There was no such evidence, and the court should have said so.

The contract between the parties to the note and the bank, is to be found in the note itself, and the agreement referred to, if it exist at all, rests in parol, and is inadmissible in evidence. *Chitty Jr.* 60. *Free vs. Hawkins*, 8 *Taunt.* 92.

If, however the contract to renew, should be supposed to be found in the written agreement, still it was improper to put it to the jury, the exposition of written agreements being for the court. *Butler & Belt vs. The State*, 5 *Gill & Johns.* 520. The question however upon the agreement of the 17th July 1827 is not before this court, it being presented in the plaintiffs exception who has not appealed.

3. The defendant was not chargeable with the $922,43, spoken of in the 4th exception, but at all events was not so chargeable, unless the jury were satisfied of the truth of the facts referred to in the testimony; and yet the court assuming the truth of those facts, gave a peremptory instruction in favor of the plaintiffs. In this there was certainly error. *Crawford vs. Berry*, 6 *Gill and J.* 63.

4. The facts disclosed in the 5th exception, make out a case of usury. The act of 1826, ch. 99, legalizes the computations in *Rowlett's* tables, and sanctions transactions theretofore entered into founded upon these tables; but there is

nothing in them, or any other law, which justifies sixty-four days interest, upon a sixty day note. Upon a 60 day note, 63 days credit are given; and the question is, whether interest shall be charged for 64 days—for a longer time, than the creditor forbears his debtor, which cannot be done. *Act of* 1704, *ch.* 69.

The case in *Thornton vs. Bank of Washington*, 3 *Peters* 36 is not like this. That was a case arising upon a note in the *District of Columbia*, where four days of grace are allowed. There is no obligation on the drawer to pay until the 64 days, and consequently 64 days interest may be charged. *Renner vs. Bank of Columbia*, 9 *Wheat.* 581. *Bank of Columbia vs. Magruder*, 6 *H. & J.* 177.

MAGRUDER and JOHNSON for the appellees.

1. When the defendant preferred his prayer in the first exception, the notes, and the agreement of the 17th July 1827 were the only proof in the case, but in the progress of the trial, other evidence was offered; and the first question therefore is, what is the effect of the agreement, taken in connection of such other evidence. By the terms of the deed from the maker of the notes to his endorsers, dated February 9th 1825, the latter would have had no remedy prior to 1829, if they had been compelled to pay the money before, because by that deed the maker only engages to pay the money in 1829. Their right of action against him was suspended until that period. Such was the condition of the parties, when the defendant signed the agreement of July 1827, when the large note was due and lying over. By this agreement the bank, at the defendant's request, agreed not to *protest* the notes, which means not only, that they will not protest formally; but that they will not take the necessary previous steps, which of course includes the previous demand—without such demand, the protest would have been unavailing, and it is not to be supposed, that the parties intended to stipulate against the performance of a nugatory act. In addition to the stipulation not to protest, is that not to ask for a renewal, which

means a renewal of notes, endorsed as those were, which were then held by the bank; and it manifestly means also, that no steps shall be taken to have them renewed. The evident spirit, and true intention of the contract was, to leave things as they stood. The legal presumption is, that when the agreement was made, both parties knew, that demand, and notice were necessary to fix the endorser. It is obvious from the deed of February 1825, that the defendant, did not desire, that demand of payment should be enforced in 1827, as he was restrained by that deed from proceeding against the maker of the notes until 1829, and consequently, he would have been remediless for two years.

The notes sued on, were not in existence when the deed of 1825 was executed, but when created, it was with reference to the terms of that deed; which provides for the then existing, and all subsequent responsibilities. Can it be supposed that the endorsers would have deprived themselves of the right to proceed against the maker of the notes until 1829, unless there had been an understanding that they should be renewed until then? They must have supposed that payment would not have been insisted on, and of course cannot be prejudiced, by the omission of the idle ceremony of a formal demand. The several deeds offered in evidence contained the whole of the makers property; at least such is the legal inference and the *onus* of proving the contrary, is upon the other side. *Shepard vs. Rogers,* 14 *Johns. Rep.* 499. *Birely & Staley vs. Holtz,* 5 *Gill and Johns.* 433. *Ib.* 455. Thus stripped of the means of payment, how could the endorsers have anticipated that he would pay?

The agreement declares, that at the request of the defendant, a renewal of the notes is not to be asked, which clearly indicates an intention, otherwise, to have them renewed. It places them all upon the same footing—that which was due, and those to become due; and if it furnishes evidence, of either demand, or a waiver of demand, the judgment must be affirmed, though the court may have erred in the opinions in the other exceptions.

2. But it is not universally true, that demand must be made, and notice given. The rule does not obtain, when the reason is inapplicable; and the reason being, that the endorser may be benefited, if demand is made, and notice given, it follows, if no such advantage can result to him, that the omission to perform this duty by the holder does not discharge him. If the endorser when compelled to pay the money, has no right to resort to the drawer for indemnity, he is not entitled to insist on the general rule. 3 *Kent Com.* 104, 105 (*2nd Ed.*) *Clopper Adm'r. vs. Union Bank,* 7 *H. and J.* 102. *Eichelberger vs. Finley & Varden. Ib.* 381, 384.

The rule which requires, that demand must be made, and notice given to the endorser in case of non-payment does not rest upon the notion, that the note may be paid by the maker if called on to do so, because such payment might be made, in the case of a note made for the accommodation of the endorser; but it is founded on the right of the endorser to go against the maker for indemnity, and where from the circumstances of the transaction he has no such right, demand and notice need not be given.

Now by the terms of the deed of February 1825, the defendant, would have had no right, if coerced to pay the money, to apply to the drawer, for indemnity until 1829—this remedy was suspended until then, and consequently a demand upon the maker, and notice to the endorser, could not have availed him. The deed created a contract, between drawer and endorsers, that the latter would look to a specific indemnity, in lieu of the general responsibility of the former, which would otherwise have resulted from the relation they bore to each other on the face of the note.

When the maker of a note gives his endorser, specific security, the latter is not entitled to require demand, and notice to himself of non-payment. 3 *Kent Com.* 113 (*2d Ed.*)

3. In reference to the sum of $922,43, the subject of the 4th exception, the facts were all admitted, and of course the question of the defendants liability for that sum, was purely a question of law, and to be decided by the court.

8

4. There is no foundation for the charge of usury—a note payable 60 *days after date,* is in fact, with the grace, payable on the 64th day, the day of the date, being counted as one. *Baily* 155. The day the note is discounted, and the day it is payable, are both to be counted. The money is subject to the check of the borrower, on the first day, and, he is entitled to the whole of the last day of grace to pay it in. It follows therefore, that in reference to a single transaction, the borrower actually has the use of the money for 64 days, and there can be no illegality in charging him with discount for that period. It may be said however, that the renewals make a difference. Now there was no specific contract for renewals, and the fact that the money to pay each note as it became due, was procured, by discounting another note, cannot affect the transaction. It must be the same, as though the money had been paid in any other way, or as if it had been procured, by discounting a note at another bank. *Thornton vs. Bank of Washington,* 3 *Peters* 37. *Ib.* 41. Each note is a distinct transaction. *Fleckner vs. U. S. Bank,* 8 *Wheat.* 338. *Firemen's Insurance Company vs. Sturgess,* 2 *Cowen* 664. *Firemen's Insurance Company vs. Ely,* 2 *Cowen* 712.

But the act of 1826 establishing *Rowlett's* tables as the rule, and confirming all prior transactions, settles the question raised in this exception. The admission is, that the bank has been governed by this table, and therefore if they have committed an error, in the application of the rule, they are not to be visited with the consequences of usury. The *intention* to take usury must be found by the jury as a fact. *Stockett vs. Ellicott,* 3 *Gill and Johns.* 123.

ARCHER, Judge delivered the opinion of the court.

We shall proceed to the examination of the agreement between *Duvall,* and the *Farmers Bank of Maryland,* in the first place, because we consider that its true construction, will dispose of the question material to be decided on the first and second bill of exceptions.

That agreement has reference to the two notes which furnish the cause of action in this case. What was the con-

dition of these notes, at the time of the agreement? One of the notes was due, the other had not arrived at maturity. The agreement refers to both notes, and must be considered as applying to both notes in the condition they then were.

As to the note which was due, the agreement not to protest, implies that there had been a demand, or why would there be an agreement not to protest? Without there had been a demand, there could be no protest. When applied to the note, not then due, the whole agreement implied that there existed an obligation to demand it, or why would there be an agreement to dispense with the protest. The fact that there would be a protest, but for the agreement, necessarily pre-supposes the duty and obligation to make the demand without which there would be no protest.

But if notwithstanding the agreement, the obligation continued to make a demand on the note, then not at maturity, why are the stipulations entered into that it shall not be protested or renewed. Such stipulations by their terms assume, that the notes would not be paid when due, and that it was so perfectly understood; if this be so, and we think it is, the inference of a dispensation with the demand appears to be irresistible. They knew the notes would not be paid, and the endorser was desirous of avoiding the effects of a protest on his credit; he therefore stipulates against it, and expressly waives notice, of what it was perfectly understood was to take place, non-payment. The very agreement to dispense with notice of non-payment, is confirmatory of this construction of the agreement. Such an agreement, presupposes there would be no payment, and assumes responsibility without notice.

As to the first note, then, the agreement furnished evidence of a demand, and was a dispensation of notice of non-payment.

As to the other note, that is the note not then due, this agreement dispensed with the demand which otherwise it would have been the duty of the party to make. And the defendant assumed the responsibility without demand, and consequently without notice. It is then our opinion, that the clear inference from, and construction of this agreement is,

that each of these notes was to lay over; that *Grafton Duvall* in the one case, dispensed with notice of non-payment—and in the other, dispensed with both demand and notice; and assumed responsibility without that, which under other circumstances would have been necessary to create a legal liability on his part.    The agreement manifestly by its very terms assumes, that these notes were to go through all the formalities of demand and notice, to render the endorser responsible, and it was to avoid such results, that at *Duvall's* solicitation the dispensation is made.    This being our construction of the agreement of the 17th of July 1827, it does not become necessary to express any opinion on the legal propriety of putting the cause to the jury, upon the hypothesis mentioned in the fifth and sixth prayers, as the jury have found in conformity with the true construction of the agreement, and as the defendant is in no manner prejudiced by the opinions of the court, which in the one case, directed the jury that the plaintiff was entitled to recover, as if there had been evidence of a demand, and in the other, that the plaintiff was not bound to give other evidence, than that which he had adduced of a demand.

By the fourth bill of exceptions, the court are made peremptorily to instruct the jury, that the plaintiff was entitled to recover the sum of $922 43.    Now, although we entirely concur with the learned judge, if the execution of the notes and endorsements, and the agreement of 17th July are proved to the satisfaction of the jury, that such would be the result; yet the direction is not put upon such ground, and the opinion has excluded from the consideration of the jury, the very basis of the plaintiffs right to recover any thing.

The court correctly refused to instruct the jury that the plaintiff was not entitled to recover, for the reasons urged in the fifth bill of exceptions; nor do we feel ourselves called upon to determine the questions which were discussed upon this bill of exceptions.    According to the facts and admissions of the parties in this bill of exception, the finding of an intention to take more than the legal interest was indispensable.

The calculations or deductions of interest according to *Rowlett's tables,* were in all cases legalized by the act of 1826, ch. 90; and the admission is, that the bank, " has *always* been in the practice of charging interest or discount, agreeably to the calculation in Rowlett's tables." Now, if it be true, that the exception does shew that greater interest or discount was in fact taken than was indicated by these tables, it would not necessarily follow, that it was usury. For that must depend on intention, and if designing to follow calculations which were lawful, and the admission of the uniform practice, would seem to lead to such a deduction, they had by mistake or error, and not by intention deviated from the rules prescribed by Rowlett, a case would be presented from which usury could not be deduced.

THE JUDGMENT OF THE COURT IS REVERSED ON THE FOURTH EXCEPTION, AND A PROCEDENDO AWARDED.